IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:22-CR-226 (DDD)

UNITED STATES OF AMERICA

v.

RICHER BRIYAN VALLE-RAUDALES,

Defendant.

## RICHER BRIYAN VALLE-RAUDALES'S OBJECTIONS TO THE DRAFT PRESENTENCE INVESTIGATION REPORT

Pursuant to Federal Rule of Criminal Procedure 32(f), Richer Briyan Valle-Raudales files the following objections to the draft Presentence Investigation Report ("PSR"). Docket Entry Number ("DE") 23.

<u>Paragraph 12</u>:

> The defendant was detained on April 29, 2022, by the Denver Police Department on an investigative hold for Assault and Domestic Violence. No charges were filed, and he was released. His biometric records were forwarded to Denver's Fugitive Operations unit as it was determined he was not legally residing in the United States. On June 17, 2022, deportation officers conducted surveillance at the defendant's last known address in Denver, Colorado. When the defendant was seen leaving this address, he was approached by officers who identified themselves. ***He began to aggressively resist arrest by rolling around on the ground and shoving the officers. A taser was deployed and the defendant attempted to wrestle it from the officer's control.*** The remaining officers were able to secure the defendant and place him in handcuffs. While they were putting him into the vehicle, he continued to resist arrest by placing his foot on the vehicle frame.

<u>Objection</u>:

Mr. Valle-Raudales objects to Paragraph 12 because he did not "aggressively resist arrest by rolling around on the ground and shoving the officers." Nor did he "attempt[] to wrestle [the taser]

from the officer's control." Rather, when law enforcement approached Mr. Valle-Raudales, they immediately deployed a taser, causing him fall on the ground and "roll[] around."

Paragraph 74:

> **FACTORS THAT MAY WARRANT DEPARTURE**
> The probation officer has identified the following as potential grounds for departure: §5K3.1 (Early Disposition Programs). The Plea Agreement indicates the Government agrees to file a motion pursuant to §5K3.1 (Early Disposition Programs), requesting a one-level downward departure. Should the government file such motion, the offense level would be 12. Based on a total offense level of 12 and a criminal history category of III, the advisory guideline range for imprisonment becomes 15 to 21 months, 1 to 3 years supervised release, and a fine range of $5,500 to $55,000. The Probation Officer would stand by a low-end guideline recommendation of 15 months.

Objection:

Mr. Valle-Raudales objects to Paragraph 74 because there are two additional factors that would warrant a downward departure. First, pursuant to U.S.S.G. § 5K2.12, the Court may depart downward if Mr. Valle-Raudales

> committed the offense because of serious coercion, blackmail or *duress*, under circumstances not amounting to a complete defense, the court may depart downward. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions, on the proportionality of the defendant's actions to the seriousness of coercion, blackmail, or duress involved, and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. **Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury**, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency. Notwithstanding this policy statement, personal financial difficulties and economic pressures upon a trade or business do not warrant a downward departure.

*Id.* (Emphases added); *see also United States v. Ortega-Mendoza*, 981 F. Supp. 694, 695 (D.D.C. 1997) (finding § 5K2.12 supported a downward departure based on an illegal reentry that was prompted by a threat of physical injury in the person's home country).

Mr. Valle-Raudales – a native of Honduras – returned to the United States because he feared serious bodily injury had he remained. Gangs, coupled with limited public services, have led to

Honduras being one of the most violent countries in the world.[1] Those gangs exercise significant territorial control of neighborhoods and extort control over ordinary residents.[2] While the Honduran government has attempted to combat that reality, it is hard to quantify any impact its policies (including deployment of national security forces) because witnesses are extorted and are threatened with physical harm if they report their interactions with law enforcement.[3] Simply put, the threat of violence from gang members in Honduras is credible and real.

Mr. Valle-Raudales has refused to join any of the gangs in Honduras and, as a result, his life – and the lives of his family – are threatened daily. The fact that Mr. Valle-Raudales returned to the United States based on the real and credible threat of physical harm he would suffer had he remained (and if he returns) is sufficient to justify a downward departure pursuant to § 5K2.12. *Ortega-Mendoza*, 981 F. Supp. at 695.

Second, for policy reasons, the Court should not add two criminal history points to Mr. Valle-Raudales's criminal history score pursuant to U.S.S.G. § 4A1.1(d). *See* PSR, ¶33. Two status points have been added to Mr. Valle-Raudales's criminal history because he committed the instant offense while under a criminal justice sentence. PSR, ¶33. The inclusion of these status points causes Mr. Valle-Raudales to be placed in Criminal History Category III; however, the United States Sentencing Commission, in a recently released study, recognized that these status points do not correlate with increased risk of rearrest or materially add to the predicative power of the criminal history score. United States Sentencing Commission, *Revisiting Status Points*, at 14-15 (June 2022)

---

[1] https://www.asj-us.org/learn/honduras-violence (last accessed February 9, 2023); https://wisevoter.com/country-rankings/most-dangerous-countries-in-the-world/ (last accessed February 9, 2023).
[2] https://www.france24.com/en/live-news/20221125-honduras-under-state-of-emergency-over-gang-activity (last accessed February 9, 2023); https://www.hrw.org/world-report/2021/country-chapters/honduras (last accessed February 9, 2023).
[3] https://www.theguardian.com/world/2023/jan/04/honduras-gangs-crackdown-xiomara-castro (last accessed February 9, 2023).

("Status offenders and non-status offenders with the same criminal history score had similar rearrest rates in the eight years following release.") (hereinafter "*Revisiting Status Points*")[4]; *id.* at 17 ("Removing status points had no statistically significant impact on the ability of the criminal history score to predict rearrest."). Particularly for similarly situated individuals, "the fact that they committed the instant federal offense while under another criminal justice sentence did not affect their likelihood of rearrest." *Id.* at 14. This Court should depart downwardly pursuant to U.S.S.G. § 4A1.3(b) because the inclusion of these points substantially over-represents Mr. Valle-Raudales's risk of re-offense.

The inclusion of these status points, which places Mr. Valle-Raudales in a higher criminal history category, over-represents the likelihood that he will reoffend and a downward departure is warranted pursuant to § 4A1.3(b). Where a calculated criminal history category "substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes" the Guidelines specifically contemplate that a downward departure may be warranted. *See* § 4A1.3(b)(1). The Sentencing Commission's recent empirical study concluded that, for offenders like Mr. Valle-Raudales, the inclusion of the status points had no connection whatsoever to an increased risk of re-offense. *See Revisiting Status Points,* at 14-15, 17. Thus, the inclusion of the status points in determining Mr. Valle-Raudales's criminal history category substantially over-represents the likelihood that he will commit another crime and results in a sentence that is "greater than necessary" to achieve 18 U.S.C. § 3553(a)'s purposes. *See Kimbrough v. United States,* 552 U.S. 85, 109-10 (2007) (holding that, in light of Commission's empirically-based conclusion that the crack/powder disparity does not serve sentencing goals, "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that

---

[4] Available at https://www.ussc.gov/research/research-reports/revisiting-status-points.

the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case."). This Court should discount those points and vary downward to the lower criminal history category, which more accurately reflects Mr. Valle-Raudales's likelihood of re-offense. *See id.*; *see also Revisiting Status Points*, at 14-15, 17.

Moreover, the Sentencing Commission now has a quorum and has indicated, based on past practices, a willingness to revise criminal history points based on empirical studies related to the risk of re-offense. Prior to 2010, defendants received so-called "regency" points for committing offenses "less than two years after release from imprisonment on a sentence counted under § 4A1.1(a) or (b) or while in imprisonment or escape status on such a sentence." U.S.S.G. § 4A1.1(e) (2004). In 2010, the Sentencing Commission removed these regency points from the criminal history score in part because its own study revealed that they did not meaningfully add to the predictive power of the criminal history score. *See* U.S.S.G. App. C Vol. III, Amend. 742 (Nov. 1, 2010) ("Recent research isolating the effect of § 4A1.1(e) on the predictive ability of the criminal history score indicated that consideration of recency only minimally improves the predictive ability."). In other words, the regency points did not serve the stated purpose of helping to identify people who were likely to reoffend, and, as a result, justifiably faced lengthier incarceration. It is well-established that, until recently, the Sentencing Commission lacked the quorum necessary to update the Sentencing Guidelines and has been unable to make many necessary amendments. *See United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020) ("The Sentencing Commission currently lacks the quorum required to amend the Sentencing Guidelines. Thus, as many courts have recognized, the Commission has been unable to revise the Guidelines in response to the First Step Act, and no amendment or new policy statement appears forthcoming." (citation omitted)). Now that the Sentencing Commission has a quorum for the next amendment cycle, it may fairly be anticipated that it will

address whether to remove these status points altogether as they did with the regency points providing further support for a downward departure pursuant to U.S.S.G. § 4A1.3(b).

Without the two-point addition, Mr. Valle-Raudales's total criminal history score is three, resulting in a Criminal History Category of II. A total offense level of 13 coupled with a Criminal History Category of II, results in an advisory sentencing guideline range of 15 to 21 months.

Respectfully submitted, this 9th day of February, 2023.

VIRGINIA L. GRADY
Federal Public Defender

/s/ *Jared Scott Westbroek*
JARED SCOTT WESTBROEK
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Email:  jared_westbroek@fd.org
Attorney for Mr. Valle-Raudales

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2023, I electronically filed the foregoing **RICHER BRIYAN VALLE-RAUDALES'S OBJECTIONS TO THE DRAFT PRESENTENCE INVESTIGATION REPORT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Albert C. Buchman, Assistant United States Attorney
Email: al.buchman@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Richer Briyan Valle-Raudales (Via U.S. Mail)

/s/ *Jared Scott Westbroek*
JARED SCOTT WESTBROEK
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Email:  jared_westbroek@fd.org
Attorney for Mr. Valle-Raudales